IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

        Plaintiff,

        vs.

RONALD HOPKINS,

        Defendants.
_____/

CR. NO. S-05-0538 EJG (GGH)

ORDER

*Introduction*

        Defendant Hopkins moves the court to enforce the discovery order of Magistrate Judge Drozd, as such orders were verbally made in court on November 8, 2007, and to impose sanctions on the government or its counsel for violation of that order. This motion for sanctions was heard by the undersigned on September 26, 2008.

*Discussion*

    A. Preliminary Matters

        Judge Drozd heard the initial discovery motion prior to the suppression motion made in this case. The parties argue Judge Drozd's intent when issuing the order – which is not clear from the precise words in the transcript given the context of the initial discovery motion and suppression motion. For example, Hopkins argues that it was Judge Drozd's intent that

1

1  regardless of whether the government was going to call a witness identified as "U.P." at
2  suppression hearing, that all Brady and Giglio information in the government's possession be
3  turned over.  The government counters that Judge Drozd had been apprised that both sides had
4  contemplated calling U.P. and what Judge Drozd meant was that no matter the side that called
5  U.P. the government was to turn over the information to be used at the suppression hearing,
6  subject to the [unstated] common sense exception that if neither side was going to call the
7  witness, Giglio "impeachment" material would not have to be disclosed.

8         Hopkins' counsel correctly attempted to have this motion for
9  enforcement/sanctions heard before Judge Drozd.  For whatever reason, she was informed by
10 Clerk's Office personnel that this was a matter for the duty magistrate judge.  After a frustrating
11 back-and-forth, Hopkins' counsel left the matter to be heard before the undersigned who was the
12 duty pre-trial criminal motion magistrate judge at the time the enforcement/sanctions motion was
13 to be heard.  This order should stand as authority that in criminal discovery order matters, if a
14 magistrate judge has issued a discovery order, attempts at enforcing that order or seeking
15 sanctions for its violation, should be heard before the issuing judge, if that judge is at all
16 available to hear it at a time appropriate for the case.

17        This is the only scheduling that makes sense in that the undersigned has been
18 asked to decipher the intent of the issuing judge from a transcript which had its own procedural
19 context at the time.  Moreover, the understanding of the issuing judge of the issues and law when
20 verbally ordering discovery is not always stated or clear to another judge.  The issuing judge here
21 is in a much better position to decipher his intent than is the undersigned months after the initial
22 order has been issued.

23        Nevertheless, because of case exigencies, the undersigned heard this motion;
24 neither side objected.

25        Point number 2 – if a party, to whom compliance with an order has been tasked,
26 believes changed conditions exist which may moot the order or otherwise cause the order to be

unenforceable, that party must seek reconsideration of the order. The party attacking the order may not simply assume that there exists some self-executing mootness or other invalidating mechanism that the party, in his or her unilateral discretion, may choose to exercise.

B. The Merits

A misconception that runs throughout the defense argument at hearing is that there is no conceptual or procedural difference between Brady (exculpatory) and Giglio (impeaching) information.[1] The former relates to evidence which directly tends to lessen a defendant's guilt, e.g., a statement from another person which tends to relieve the defendant of responsibility for the crime, and the latter to *witness credibility* type evidence of a *collateral* nature, e.g., evidence that the government's witness who is implicating the defendant is not to be trusted in his implications because of bias, previous misrepresentations in similar matters, and so forth, i.e., indirectly making it less likely that the defendant is guilty. Indeed, the two cases themselves involve facts which demonstrate the conceptual difference.[2] While each type of "favorable" evidence stands on equal Constitutional footing, and is not distinguished in that regard, United States v. Bagley, 473 U.S. 667, 676 (1985), there is an important procedural and conceptual difference which attaches to the two types of "favorable-to-the-defendant" evidence. Brady evidence is to be disclosed to the defense at a time such that the defendant is able to put the evidence to meaningful use, i.e., perform the necessary investigation and follow-up. United

---

[1] Brady v. Maryland, 373 U.S. 83 (1963); Giglio v. United States, 405 U.S. 150 (1972).

[2] Brady involved a confession from an accomplice; Giglio involved the promise of immunity to a witness. Non-testimonial evidence directly related to the crime at issue can be both exculpatory and impeaching at the same time, but to be such, the evidence must directly relate to the crime charged. For example, if a document, such as a hotel invoice, exists which shows that the defendant was in City A at the time of the crime, and his presence in City B is material to his guilt, the document could both be used to directly show that the defendant was not in City B, *or* it could be used to impeach a witness who stated that he saw the defendant in City B. In the context of the law, this would be Brady evidence regardless of its use. However, a matter collateral to guilt for the crime charged, e.g., a witness' rap sheet or record or consideration for testimony (Giglio), something affecting the credibility of a witness, is solely impeaching.

3

States v. Gordon, 844 F.2d 1397, 1403 (9th Cir. 1988).  However, Giglio evidence need not be disclosed until a witness testifies: "[s]ince information concerning favors or deals merely goes to the credibility of the witness, it need not be disclosed prior to the witness' testifying." United States v. Rinn, 586 F.2d 113, 119 (9th Cir. 1978).  This case illustrates the common sense perception that a witness' bias or reputation for prevaricating, for example, is only important if the witness actually testifies.[3]

The second misconception by the defense is that any evidence which might be "helpful" to the defense, although not Brady or Giglio, need be disclosed.  Fed. R. Crim. P. 16(a)(1)(E) only requires that the government "permit the defendant "*to inspect and to copy or photograph*" certain evidence under three conditions: (1) the item is material to preparing the defense, (2) the government will use the evidence in its case in chief, or (3) the item was obtained from or belonged to, the defendant.  This Rule is *not* the equivalent of a "request for production" in a civil suit, in that the defendant is not entitled to issue a generally worded request for production of documents for things of which their existence is only generally surmised, and might lead the defendant to relevant evidence.  See United States v. Ramos, 27 F.3d 65, 67-68 (3rd Cir.1994) (criminal and civil discovery "vastly different"); United States v. Hancock, 441 F.2d 1285, 1287 (5th Cir. 1971) (criminal discovery "narrower" than civil discovery); United States v. Blast, 2007 WL 1795685 (E.D.Pa. 2007) ("Criminal discovery is much more limited than civil discovery.").  See also United States v. Chon, 210 F.3d 990, 995 (9th Cir. 2000) ("Rule 16(a)(1)(C) tends to support the 'shield-only' reading. If 'defense' means an argument in response to the prosecution's case in chief, there is a perceptible symmetry between documents 'material to the preparation of the defendant's defense,' and, in the very next phrase, documents 'intended for use by the government as evidence in chief at the trial.' Id. at 462, 116 S.Ct. 1480.

---

[3]Of course, if the evidence of collateral impeachment is not clear on its face, the government may well desire to disclose it earlier to stave off a request for continuance during trial when credibility information, which needs to be developed, is sprung on the defense.

4

Under <u>Armstrong</u>, the appellants here are entitled to the discovery of only those materials relevant to the charges of theft and conversion of government property and receipt of such property [and not other information which might be helpful to the defense]").  The defendant must specify what the government has which might be material to the defense and be permitted to copy it, or the government must permit inspection of items the government will use in its case, or finally, the government must produce what it took from the defendant or was owned by the defendant.  All of these categories are very specific and do not require guesswork on the part of the prosecutor.

Moreover,

> Subdivision (a)(1)(C) [now E] gives a right of discovery of certain tangible objects under the specified circumstances.... The new rule requires disclosure if any one of three situations exists: (a) *the defendant shows that disclosure of the document or tangible object is material to the defense*, (b) the government intends to use the document or tangible object in its presentation of its case in chief, or (c) the document or tangible object was obtained from or belongs to the defendant.

1974 Amendment, Advisory Committee Notes (emphasis added).[4]

With the foregoing in mind, the undersigned ruled as follows:

1. Any <u>Brady</u> exculpatory evidence, not disclosed prior to this time, is to be disclosed no later than October 10, 2008;

2. The government prosecutor shall filed a declaration no later than October 10, 2008 setting forth the following:

   a. Whether U.P. will be called by the government as a witness for trial; If U.P. is not to be called by the government, the prosecutor's discovery obligation regarding all

\\\\\

---

[4] At hearing, defendant argued that impeachment material should be disclosed now because it "might" aid the defense.  This speaking Rule 16 request was neither heard by Judge Drozd, nor did the defendant show its specific materiality at hearing.

5

Giglio information is at an end;[5]

           b. If U.P. is to be called by the government as a witness:

The prosecutor shall relate in the declaration the specific Giglio information which it has already disclosed, and shall identify that information by Bates stamp or otherwise.[6] To the extent that Giglio information remains to be disclosed, *all* such remaining Giglio material shall be identified in the declaration and concurrently disclosed to the defense no later than October 10. This departure from Rinn is justified as the undersigned is ordering early disclosure pursuant to its order enforcement/sanction power. See United States v. W.R. Grace, 526 F.3d 499, 515-516 (9th Cir. 2008) (en banc) ("Although there are limits to the district court's inherent authority, the district court here is well within its authority to manage its docket in enforcing a valid pretrial discovery order." This sanction is imposed due to the government's failure to timely seek reconsideration/clarification of Judge Drozd's discovery order.

*Conclusion*

           Defendant Hopkins' Motion for Sanctions... (Docket # 79) is granted in part and denied in part as set forth above.

DATED: 10/03/08　　　　　　　　　　　/s/ Gregory G. Hollows

                                                 UNITED STATES MAGISTRATE JUDGE

hopkins.ord2

---

[5] There is simply no authority known to the undersigned that would task the government with supplying Giglio material to the defense when the *defense* contemplates calling the witness on the off chance that the defendant would like to impeach his own witness, or have that witness impeached by the government on cross-examination.

[6] Aside from Brady exculpatory material mentioned in two places, all the remaining categories of concern regarding Judge Drozd's order set forth in the Motion at page 4 involve Giglio material.